GUSTAVE M. PIERMONT and LILLIAN PIERMONT, Copartners, Doing Business under the Firm Name and Style of G. M. PIERMONT & Co., Respondents, v. BENJAMIN SCHLESINGER, as President, and ABRAHAM BAROFF, as Secretary, of the International Ladies Garment Workers Union, and Others, Defendants, Impleaded with ISIDORE SCHOENHOLTZ, as Secretary of the Ladies Waist and Dressmakers Union Local No. 25, and Others, Appellants.

First Department, April 29, 1921.

Injunction — suit by employer to restrain officers of international union and former employees from picketing, etc.— sufficiency of complaint — temporary injunction denied.

Where in a suit by an employer to restrain the president and secretary of an international union and also certain former employees who were out on strike from picketing and interfering with other employees of the plaintiff in an effort to persuade said other employees to violate their agreements with the plaintiff, it is alleged, in effect, that the defendants resorted to picketing, etc., to harass and annoy plaintiff's employees, but there is no allegation that the defendants were persuading said employees to violate their agreements with the plaintiff nor that they succeeded in so doing, and there is no evidence that the defendants knew of the so-called agreements between the plaintiff and its employees, a temporary injunction should not be granted restraining the defendants from doing any acts in violation of the agreements between the plaintiff

and its employees, where the affidavits in support of such motion allege only three instances of lawlessness, one of which was not shown to have been committed by the defendants or at their instigation or with their knowledge or sanction and while the other instances were shown to have been committed by the individual defendants, there was no evidence that the union was responsible therefor, and it further appeared that the strike had been in progress for three weeks before the injunction was sought.

PAGE and MERRELL, JJ., dissent.

APPEAL by the defendants, Isidore Schoenholtz, as secretary, and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 9th day of December, 1920, granting plaintiffs' motion against all of the defendants other than the defendant International Ladies Garment Workers Union and enjoining defendants other than the International Ladies Garment Workers Union during the pendency of this action from doing any acts injurious to the plaintiffs, in violation of their rights under certain contracts of employment entered into between the plaintiffs and their employees on August 17, 1920, and from enticing or persuading employees under contract with the plaintiffs from deserting their employments and from instigating a strike among the same employees of the plaintiffs and from picketing and aiding in the picketing of the plaintiffs' place of business, etc.

*Morris Hillquit* of counsel [*Morris Rothenberg,* attorney], for the appellants.

*Reuben Tally* of counsel [*Gordon, Tally & Gordon,* attorneys], for the respondents.

GREENBAUM, J.:

The facts are conflicting as to why the plaintiffs' employees struck. Each side charges the other with violating a contract under which the plaintiffs' shop had been operating. What we are immediately concerned with, however, is what happened after the strike went into effect. It appears from the affidavit of one of the plaintiffs that they determined upon a policy of running their factory upon a non-union basis and accordingly entered into agreements with their employees,

First Department, April, 1921.                    [Vol. 196

under which they were to be employed from week to week with the express understanding that they had ceased to be affiliated with the defendant Local Union No. 25 and that they would not·join any union while in the employ of the plaintiffs.

The motion was based upon the affidavit of one of the plaintiffs, Gustave M. Piermont, and the supporting affidavits of Esther Fisher, Lena Silverman and Morris Isaacs, employees of the plaintiffs. The affiant Piermont alleges that in violation of the agreements with his employees, the latter are prevented from performing their duties because of the acts of the defendants in molesting, threatening and intimidating them in an effort to induce and force plaintiffs' employees to violate their contracts of employment.

It is also alleged by Piermont that the defendants have " continuously since August 9, 1920, and still are wrongfully and unlawfully engaged in the practice of picketing plaintiffs' factory. * * *." The defendants also caused the homes of the plaintiffs' workers to be visited and the said defendants have been since the 9th day of August, 1920, and still are coercing, threatening, intimidating, halting and turning aside against their will the employees who would go to and from the place of business of the plaintiffs, and who desire and are willing to work therein;" that three of the defendants, who are specially named, assaulted one of the plaintiffs' employees named Esther Fisher on August 18, 1920, and that on September 9, 1920, a Mr. Isaacs, who is in the plaintiffs' employ as a cutter and patternmaker, was " attacked by two men, who, upon information and belief, are in the employ of the defendant Local Union No. 25."

The affidavit of Esther Fisher alleges that she entered into a contract of employment with the plaintiffs as set forth in the affidavit of Mr. Piermont; that since the commencement of the strike, to wit, August 9, 1920, she has been annoyed on almost every occasion when she left plaintiffs' place of business by persons who were the former employees of the plaintiffs and who are named as defendants in the action; that she has been subjected to bodily assaults, called vile names and threatened with bodily injury; that some of these persons had come to her home and repeated threats of injury to her in the

presence of other persons. This affiant calls particular attention to the fact that on August 18, 1920, while going to plaintiffs' place of business she was accosted by several of the defendants, former employees of the plaintiffs, who pulled her hair, slapped her face and spat upon her; that among the persons who committed such acts were Levine, Sadawitz and Glassburg; that upon complaint against these defendants, for their unlawful acts, the defendants were brought before Magistrate Ten Eyck, who after a hearing fined each of the defendants ten dollars. Miss Fisher alleges that notwithstanding the imposition of these fines, the former employees of the plaintiffs, mentioned in this action as defendants, have continued to annoy her by repeated acts of violence, but the nature of them is not specified.

The affidavit of Lena Silverman alleges that her employment with plaintiffs is that of an order clerk having charge of the shipping of packages by express; that on August 18, 1920, at about five-fifteen P. M., she had been notified that certain packages of goods which had been taken downstairs by the porter for the purpose of shipping were being tampered with; that when she reached the ground floor the defendant Glassburg took her by the arm, pulled and pinched her and then ran away; that she caused the arrest of the defendant Glassburg and that a hearing in the case took place before Magistrate Ten Eyck simultaneously with the hearing on the complaint of Miss Fisher.

The third affidavit is that of Morris Isaacs, a patternmaker and cutter in the employ of the plaintiffs, who alleges that since September 9, 1920, he was occasionally subjected to the annoyance of being called " scab " and other names by pickets who were formerly in the employ of the plaintiffs; that on September 9, 1920, at about six o'clock P. M., while on his way home, which was on One Hundred and Forty-fourth street between Amsterdam avenue and Broadway, he was attacked by two men on Amsterdam avenue near One Hundred and Forty-third street, who punched him about his eyes injuring them and breaking his eyeglasses and who at the same time said to him a " damn scab we've got you at last."

The foregoing allegations are the only ones made in behalf

of the plaintiffs which touch upon the alleged interferences of defendants with the contracts of employment and upon the acts of intimidation, coercion and criminal assaults of the defendants.

Mr. Piermont's affidavit with respect to these matters states mere conclusions necessarily based upon information which he may have received but the source and nature of which he does not disclose. There is nothing in the moving affidavits which shows that any of the defendants made any attempt specifically to induce any of the plaintiffs' employees to break their contracts of employment with the plaintiffs, nor is there a scintilla of evidence that the defendants knew anything whatever about the agreements of employment mentioned in the affidavit of the plaintiffs.

On the question of violence and annoyance to the employees of the plaintiffs, there are only three instances of assault, one the assault upon Miss Fisher and undisclosed annoyances to which she alleges she was subjected thereafter from time to time; the second upon Miss Silverman, and the third upon Isaacs who refers to the fact that he has been " occasionally " annoyed by being called " scab " and other names, and that on one occasion, September 9, 1920, he was assaulted and called names.

It is to be observed that Isaacs' affidavit does not show that the persons who assaulted him were any of the defendants in this action or that their action was induced or sanctioned by any of them or the defendant union.

The plaintiffs rely upon *Hitchman Coal & Coke Company* v. *Mitchell* (245 U. S. 229) in support of their contention, that the acts of defendants were violative of their contractual relationship with their employees. In that case, after stating that the plaintiff had entered into an agreement with every one of its employees that it would continue to run its mine upon a non-union basis and would not recognize the United Mine Workers of America and that if any man wanted to become a member of that union he could not do so and remain in plaintiff's employ, the court in the prevailing opinion said: " Under that agreement plaintiff ran its mine for a year and more, and, so far as appears, without the slightest disagreement between it and its men and without any grievance

on their part. Thereupon defendants, having full notice of the working agreement between plaintiff and its men, and acting without any agency for those men, but as representatives of an organization of mine workers in other States, and in order to subject plaintiff to such participation by the union in the management of the mine as necessarily results from the making of a closed-shop agreement, sent their agent to the mine, who, with full notice of, and for the very purpose of subverting the status arising from plaintiff's working agreement and subjecting the mine to the union control, proceeded without physical violence, indeed, but by persuasion accompanied with threats of a reduction of wages and deceptive statements as to the attitude of the mine management, to induce plaintiff's employees to join the union and at the same, time to break their agreement with plaintiff by remaining in its employ after joining; and this for the purpose not of enlarging the membership of the union, but of coercing plaintiff, through a strike or the threat of one, into recognition of the union."

It will be noted that one of the essential elements that entered into the facts upon which the court decided that the acts of the defendants constituted an unlawful enticement of plaintiff's employees was that defendants in that action had notice of the working agreement between plaintiff and its men. In the case before us there is no evidence whatever of the fact that the defendants knew that the plaintiffs had an agreement with their employees as stated in the moving papers.

A study of the complaint in this action reveals that while the plaintiffs allege the making of the agreements with their employees, there is no allegation that the defendants were persuading plaintiffs' employees to violate these agreements nor that they succeeded in persuading any employees to break their agreements. Nor is there any allegation that defendants knew of the existence of the alleged contracts with their employees. The allegations in the complaint in effect are that the defendants resorted to picketing, coercion, intimidation and acts of violence and lawlessness to harass and annoy plaintiffs' employees in coming to and going from plaintiffs' place of business. There is no allegation in the complaint

which suggests the theory of a conspiracy on the part of the defendants to entice plaintiffs' employees to breach their contracts of employment.

This appeal, therefore, presents no facts which require an expression of opinion as to whether plaintiffs would be entitled to injunctive relief, if knowledge of the existing agreement between plaintiffs and their employees had been brought to defendants, who with full knowledge of such contractual relationship, attempted peaceably to persuade or entice these employees to breach their contracts of employment.

There only remains to consider whether the moving papers show a state of facts from which it may be fairly inferred that the defendants are conducting their strike peaceably and without resort to lawless acts, whether of violence, intimidation, coercion or threats.

Only three instances of lawlessness are given. One of these is not shown to have been committed by the defendants or at their instigation or with their knowledge or sanction. The other two instances were shown to have been committed by certain of the individual defendants, but there is no evidence which would justify the conclusion that the union was responsible for these acts or that all or any of the other defendants in any manner encouraged them. It is significant too, that although the strike had been in progress for some weeks before the motion for injunction was made, there are no affidavits other than of those three employees submitted indicating that the defendants were interfering with or annoying or harassing any of the other of plaintiffs' employees.

The order granting the plaintiffs' motion for an injunction must be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

DOWLING and LAUGHLIN, JJ., concur; PAGE and MERRELL, JJ., dissent.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.